IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KATHLEEN STANLEY MCCAFFERY,   )
                              )
      Plaintiff,                )
                              )
     v.                      )  Civil Action No. 1:23-cv-965 (RDA/JFA)
                              )
FAIRFAX COUNTY, *et al.*,         )
                              )
      Defendants.           )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Fairfax County's Motion to Dismiss Counts 1-4 (Dkt. 13) and Defendant International Association of Fire Fighters' ("IAFF") Motion to Dismiss Counts 5 and 6 (Dkt. 24) of Plaintiff Kathleen Stanley McCaffery's ("Plaintiff") Amended Complaint (Dkt. 3). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition.

Considering the Motions together with their respective Memoranda in Support (Dkt. Nos. 14; 25); Plaintiff's Oppositions (Dkt. Nos. 17; 27); and Defendants' Replies (Dkt. Nos. 20; 28), this Court GRANTS-IN-PART and DENIES-IN-PART Defendant Fairfax County's Motion and GRANTS Defendant IAFF's Motion for the reasons that follow.

I.   BACKGROUND

A.   Factual Background[1]

Plaintiff brings a six-count Amended Complaint alleging that Defendants Fairfax County and IAFF violated Title VII of the Civil Rights Act of 1964.  Dkt. 3.  Specifically, Plaintiff brings Counts 1-4 against Defendant Fairfax County, *id.* ¶¶ 73, 75, 77, 79, and Counts 5 and 6 against Defendant IAFF, *id.* ¶¶ 81, 83.  Plaintiff alleges that Defendant Fairfax County subjected her "to a hostile work environment because of her sex," retaliated against her because of "her opposition to sex discrimination," and denied her a promotion because of her sex and opposition to sex discrimination.  *Id.* ¶¶ 73, 75, 77, 79.  Further, Plaintiff claims that Defendant IAFF also subjected her "to a hostile work environment because of her sex," *id.* ¶ 81, and, "[a]s an act of retaliation, . . . subjected [Plaintiff] to a hostile work environment because of her opposition to sex discrimination," *id.* ¶ 83.

Plaintiff began working as a firefighter with Defendant Fairfax County's Fire and Rescue Department ("FRD") in January 1995.  *Id.* ¶ 10.  She was promoted to Battalion Chief in 2011 but was detailed to the U.S. Government from 2011 to 2016.  *Id.* ¶¶ 9, 12.  Upon her return to the FRD in March 2016, Plaintiff was assigned as the Battalion Chief of Special Projects and, in April 2016, as the Women's Program Officer ("WPO").  *Id.* ¶¶ 18-20.  As the WPO, Plaintiff served "as a women's advocate in meetings with Senior Staff and Command Staff."  *Id.* ¶ 20.  Women in the FRD brought complaints of their mistreatment to her and, at one point, "[c]omplaints concerning roughly half of all the women in the department were brought to her attention."  *Id.* ¶¶ 21-22.  From

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

March 2016 to February 2018, Plaintiff raised the following complaints, among others, with her superior officers:

- "Women's continued exclusion from training for specialty skills apparatuses, such as rescue and ladder trucks, in favor of steering them to medic training" while "men of the same or lesser seniority receive such training." *Id.* ¶ 24(b).

- "Women's virtual exclusion from overtime shifts," receiving just .08% of shifts in 2015-2016. *Id.* ¶ 24(c).

- Women recovering from childbirth being required to submit FMLA documentation in person or face disciplinary action. *Id.* ¶ 24(e).

- Rescission of discipline against a Battalion Chief who told a veteran female Captain, "'When you're wearing a shirt like that, my eyes are right here [gesturing around breasts], and I don't hear a word you say,' and 'That's why you all get assaulted and raped,'" or words to that effect, as well as the subsequent retaliation against the Captain for pursuing her complaint." *Id.* ¶ 24(f).

- "Cursory investigation of a January 2017 incident in which a penis-shaped water bottle was displayed in a fire station." *Id.* ¶ 24(g).

- "Relentless bullying by a supervisor of a junior female firefighter, resulting in her placement on an unwarranted Performance Improvement Plan." *Id.* ¶ 24(h).

- "Bullying of three women at one firehouse by the station's captain." *Id.* ¶ 24(i).

- A Battalion Chief denied a female firefighter's requests to initiate grievances and was promoted to Deputy Fire Chief while the woman was transferred. *Id.* ¶ 24(j).

- "Male firefighters repeatedly soiling a urinal in the female restrooms." *Id.* ¶ 24(k).

- "Female firefighters not receiving an adequate number of sleeping quarters." *Id.* ¶ 24(l).

- In May 2017, a Captain "shut off Station 26's activated fire alarm in the middle of the night and put responding units in service, while a fire in the bay nearly resulted in the women's sleeping quarters being engulfed in flames." *Id.* ¶ 24(m).

- Women faced discharge for illnesses misdiagnosed as non-occupational. *Id.* ¶ 24(n).

- "The lack of discipline—and instead, outright promotion—of male officers found responsible for many of the above complaints." *Id.* ¶ 24(q).

Plaintiff faced "hostility" from then Fire Chief Bowers and was "berated" during staff meetings for having raised these complaints. *Id.* ¶ 25. Plaintiff also alleges experiencing various other slights from FRD personnel, including being made to speak last to the FRD's new recruits even though the uniformed men spoke before civilian staff and being ordered to report her arrival and departure every shift due to an anonymous complaint alleging that she was guilty of time and attendance fraud even though she had been on an approved absence. *Id.* ¶¶ 26-28.

Plaintiff eventually resigned from the WPO position on January 29, 2018, because she felt "defeated by her inability to effect change for women in the department." *Id.* ¶ 29. In her letter of resignation, which became public, Plaintiff "identified twenty incidents or practices that had prompted her decision" to step down. *Id.* ¶¶ 31, 45. The FRD held press conferences to address the contents of Plaintiff's resignation letter. *Id.* ¶ 32-33. At the February 1, 2018 conference, Fire Chief Bowers allowed women supporting the FRD to speak to the media while on duty and in uniform but required Plaintiff to be off duty and not in uniform when speaking with reporters. *Id.* ¶ 32. During the March 2018 conference, Defendant Fairfax County issued a report in which it "reviewed the incidents outlined in [the resignation] letter," but concluded that most of the claims were "unfounded or, if founded, had been addressed satisfactorily." *Id.* ¶¶ 32-34.

After Plaintiff's letter became public, Plaintiff claims she was pushed out of the FRD. *Id.* ¶¶ 36-44. In a February 7, 2018 meeting, Fairfax County Director of Human Resources ("Director of HR"), Cathy Spage, told Plaintiff that it was "best that [she] finish [her] career outside the fire department." *Id.* ¶ 37. Plaintiff "rejected that proposal, and stated her desire to continue working at the FRD." *Id.* ¶ 38. In an April 4, 2018 meeting with Ms. Spage, Fire Chief Bowers, and Assistant Chief for Personnel Services Caussin ("AC Caussin"), Ms. Spage gave Plaintiff three options that all involved being demoted. *Id.* ¶ 37. Plaintiff could either choose to take one of two

positions that "would be exceptionally low-status and would involve no regular contact with the FRD," resulting in her being "relieved of her rank, office, and car" or, "should she refuse both assignments, Ms. Stanley would no longer serve as [Battalion Chief], but instead would assist with assorted FRD personnel with ad hoc projects." *Id.* ¶¶ 39-43. On April 11, 2018, Plaintiff declined the three options in a letter sent by her attorneys to the County Attorney and Fire Chief Bowers. *Id.* ¶ 44.

Additionally, immediately after Plaintiff's WPO resignation letter became public, Plaintiff claims that she "became the target of both overt and more insidious retaliation." *Id.* ¶ 45. She lists several retaliatory acts allegedly taken by the FRD and its personnel:

- Plaintiff's hard drive was removed from her computer and replaced with a defective one, rendering the computer unusable "since that time (early February), despite almost daily requests for repair." *Id.* ¶ 45

- Fire Chief Bowers' personal aide "removed her name from the list of all Battalion Chiefs emails" to receive notices of mandatory meetings and trainings. *Id.*

- Plaintiff was excluded from "meetings with senior VIP officers of other fire departments, which" would have included her in the past. *Id.*

- Defendant Fairfax County "imped[ed] her ability to fulfill her role as Host Agency liaison" for the annual International Association of Women in Fire and Emergency Services ("iWomen") conference to be held in May 2018 by declining to provide funding, resources, and personnel to support despite doing so for similar conferences in the past. *Id.* ¶¶ 46-48.

- In early June 2018, Plaintiff and a Deputy Fire Chief sought to have her facilitate leadership development classes at the fire academy and sent multiple emails to AC Caussin about the request. *Id.* ¶ 64-66. AC Caussin did not respond until Plaintiff's counsel intervened, and in early July 2018, Plaintiff "was offered a position as Battalion Chief of Special Projects at the fire academy," which she accepted. *Id.* ¶ 66.

- In June 2018, AC Caussin denied Plaintiff's request to accept an invitation to participate in an assessment of candidates for Fire Captain for the Louisville, Kentucky Metro Civil Service Board. *Id.* ¶¶ 67-69.

Plaintiff also alleges that Defendant Fairfax County rejected her application for Fire Chief "based on her sex and advancement of sex discrimination complaints." *Id.* ¶ 52-63.  Plaintiff applied for the position "being vacated by retiring [Fire Chief] Bowers" on May 8, 2018.  *Id.* ¶ 52.  Plaintiff was interviewed for the position on June 21, 2018.  *Id.* ¶ 55.  The interviewer, an outside executive from the Fairfax County Department of Public Works, told Plaintiff that she was a "very strong candidate" and that he would forward her application to the County Executive, Bryan Hill, for consideration for a final interview.  *Id.* ¶ 56.  Mr. Hill allegedly interviewed all referred candidates except for Plaintiff.  *Id.* ¶ 58.  Moreover, the only woman who received a final interview allegedly "did not meet the minimum qualifications for the position."  *Id.* ¶ 59.  Plaintiff claims that her own qualifications were "commensurate with, and in some respects superior to, those of the other candidates whom Hill selected for a final interview."  *Id.* ¶ 61.  Plaintiff also claims that her "qualifications are commensurate with, and in some respects superior to," those of John Butler—the man who ultimately received the position.  *Id.* ¶¶ 62-63.

In addition to the alleged retaliatory acts of Defendant Fairfax County, Plaintiff alleges that "the firefighters' union, IAFF Local 2068—of which Ms. Stanley has been a dues-paying member for a quarter century—also retaliated against her" by openly disparaging her.  *Id.* ¶¶ 49-50.  Specifically, Plaintiff claims that Executive Board Member Dave Barlow "made numerous hostile posts about [Plaintiff] on Local 2068's private Facebook group page," calling for her removal from membership and attacking those who defended Plaintiff.  *Id.* ¶¶ 50(a)-(f).  Moreover, other senior leadership "liked" Mr. Barlow's posts and other similarly hostile posts.  *Id.* ¶ 50(d).  Plaintiff also alleges that Local 2068 attempted to further "punish" her by "rescinding pledges of support to" the iWomen conference.  *Id.* ¶¶ 46, 50(g).  Plaintiff claims that Local 2068 failed to "provide financial assistance," "recruit members to volunteer to assist at the conference," "communicate

with [Plaintiff] about the conference," "sponsor member representatives to attend the conference," and "publicize the conference among its membership." *Id.* ¶ 50(g). Additionally, Executive Board Member Jeff Loach called for union members to attend the FRD's second press conference addressing Plaintiff's letter as a show of union unity. *Id.* ¶ 50(h). Plaintiff allegedly reported the posts on Local 2068's Facebook page to Defendant Fairfax County's Internal Audit Office, but no action was taken. *Id.* ¶ 51.

### B.   Procedural Background

Plaintiff filed a formal Charge of Discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2018. *Id.* ¶ 3. The EEOC found reasonable cause that Defendant Fairfax County retaliated against Plaintiff for opposing discriminatory practices on December 16, 2022. *Id.* A right to sue notice was issued on May 16, 2023, after conciliation failed. *Id.* Additionally, Plaintiff claims that a right to sue Defendant IAFF was issued on May 8, 2023. *Id.* ¶ 4. Plaintiff's EEOC Charge, however, names "Local 2068, International Association of Firefighters" as the organization that she believes discriminated against her. Dkt. 28-1, Ex. A at 6.[2]

Plaintiff initiated this civil suit against Defendants Fairfax County and IAFF on July 21, 2023, Dkt. 1, and filed the instant Amended Complaint on August 8, 2023, Dkt. 3. On September 21, 2023, Defendant IAFF moved to dismiss the original complaint, Dkt. 10, and Defendant Fairfax County moved to dismiss the Amended Complaint, Dkt. 13. Plaintiff filed Oppositions to

---

[2] The administrative decision, Dkt. 28-1, Ex. A, regarding Plaintiff's EEOC Charge is "integral to the [C]omplaint," and the Court can consider it in ruling on Defendant's Motion to Dismiss since there is no dispute as to its authenticity. *Tucker v. Sch. Bd. of the City of Va. Beach*, No. 2:13-cv-530, 2014 WL 5529723, at *8 n.4 (E.D. Va. Oct. 31, 2014) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see also Prosa v. Austin*, 2022 WL 394465, at *14 (D. Md. Feb. 8, 2022) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." (quotation omitted)).

both motions on October 10, 2023.  Dkt. Nos. 17; 18.  Defendant Fairfax County filed a Reply on

October 11, 2023.  Dkt. 20.  Recognizing its error, Defendant IAFF withdrew its first motion to

dismiss, Dkt. 22, and moved to dismiss the Amended Complaint on October 20, 2023, Dkt. 24.

Plaintiff opposed Defendant IAFF's motion on November 3, 2023, Dkt. 27, and Defendant IAFF

replied in support of its motion on November 9, 2023, Dkt. 28.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a

complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When

reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual

allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations

omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,'

nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"

*Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v.

Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*,

556 U.S. at 678.  Generally, courts may not look beyond the four corners of the complaint in

evaluating a Rule 12(b)(6) motion.  *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d

500, 508 (4th Cir. 2015).  However, "[i]n employment discrimination cases, courts often take

judicial notice of EEOC charges and EEOC decisions." *Prosa*, 2022 WL 394465, at *14 (quotation

omitted).

## III.   ANALYSIS

Each Defendant has filed a motion to dismiss the claims against it.  Plaintiff opposes each Motion.  The Court will discuss each motion and the arguments therein separately below.

### A.   Defendant Fairfax County's Motion to Dismiss for Failure to State a Claim

Plaintiff asserts four counts of her Amended Complaint against Defendant Fairfax County: (i) Hostile Work Environment based on Plaintiff's sex; (2) Retaliation due to Plaintiff's opposition to sex discrimination; (3) Denial of Promotion based on Plaintiff's sex; and (4) Retaliatory Denial of Promotion due to Plaintiff's opposition to sex discrimination.  *Id.* ¶¶ 73, 75, 77, 79.  Defendant Fairfax County seeks to dismiss all of the asserted claims.

### 1.   Hostile Work Environment – Sex Discrimination Claim (Count 1)

Plaintiff's first claim asserts that Defendant Fairfax County "subjected Ms. Stanley to a hostile work environment because of her sex," in violation of Title VII.  Dkt. 3 ¶ 73.  Defendant Fairfax County maintains that this claim should be dismissed because Plaintiff fails to allege conduct that is sufficiently severe or pervasive to support a hostile work environment claim.  Dkt. 14 at 6.

To state a hostile work environment claim, Plaintiff must allege sufficient facts to show that the alleged conduct she experienced was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) imputable to her employer.  *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495-96 (4th Cir. 2015).  Stated differently, a plaintiff must plausibly plead that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). There is no precise formula for determining whether a work environment is "abusive" or "hostile"; such a determination can be made "only by looking at all the circumstances." *Id.* at 23.

Defendant Fairfax County does not contest that the first or second prongs are satisfied. The first element, which requires Plaintiff to show that Defendant's conduct was unwelcome, is sufficiently evidenced by Plaintiff's allegations that she repeatedly lodged complaints with Senior Staff and Command Staff regarding various instances of sex-based discrimination. Dkt. 3 ¶ 20-25; *see also Sowash v. Marshalls of MA, Inc.*, No. 21-1656, 2022 WL 2256312, at *2 n.1 (4th Cir. 2022) ("The first element . . . was evidenced . . . by [the plaintiff's] complaints to management about Hughes's behavior."). Furthermore, Plaintiff has sufficiently pleaded that the discrimination was based on sex. A plaintiff can establish discrimination based on sex by "showing that the alleged harasser has general hostility toward people of that gender in the workplace[] or direct comparative evidence of treatment of men versus women." *Atkins v. Computer Scis. Corp.*, 264 F. Supp. 2d 404, 410 (E.D. Va. 2003).

Here, Plaintiff alleges numerous instances that demonstrate a general hostility towards women in the FRD, including a Battalion Chief making lewd comments about "assault[] and rape[]," the display of "a penis-shaped water bottle . . . in a fire station," the prevention of a female firefighter from initiating grievances, "male firefighters repeatedly soiling . . . the female restrooms," "[f]emale firefighters not receiving an adequate number of sleeping quarters," and the "relentless" bullying of multiple women. Dkt. 3 ¶ 24. Plaintiff also alleges differential treatment of men versus women. For instance, Plaintiff claims that women are continuously excluded "from training for specialty skills apparatuses . . . while men of the same or lesser seniority receive such

training; that women are excluded from overtime shifts, "receiving just .08% of shifts in 2015-16"; and that women face procedural inconsistencies for promotions and transfers, "contrasted with favorable treatment of comparable efforts by men." *Id.* ¶ 24(b)-(c), (o).  Together, these allegations provide a plausible basis to believe that the alleged conduct amounted to discrimination on the basis of sex. *See Harris v. Mayor & City Council of Baltimore*, 429 F. App'x 195, 200 (4th Cir. 2011) (explaining "that 'the critical inquiry is whether plaintiff's *environment* was hostile or abusive because of her sex' and not solely on whether the conduct was directed at the plaintiff" (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 332 (4th Cir. 2011)) (internal quotations omitted)).

In seeking dismissal of Plaintiff's hostile work environment claim, Defendant asserts that the third element is unsatisfied because Plaintiff's allegations fail to show that the alleged conduct was sufficiently severe or pervasive to support a hostile work environment claim.

Factors relevant to the "severe or pervasive" determination "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  Plaintiff "must show not only that she subjectively found her work environment to be 'hostile or abusive' but also that an 'objectively reasonable' person would have found it to be so." *Harris*, 429 F. App'x at 201.  To satisfy the objective element, Plaintiff "must show that the environment was pervaded by discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive environment." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 176 (quoting *Jennings v. U.N.C.*, 482 F.3d 686, 695 (4th Cir. 2007)).  The Fourth Circuit has made clear, however, that "Title VII does not create a general civility code in the workplace" and "complaints premised on nothing more than rude treatment by

11

[coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations and quotation marks omitted).

As to the subjective component, aside from conclusory statements that Plaintiff was "subjected to a hostile work environment based on her sex" and that she "observed" problems, Dkt. 3 ¶¶ 23, 73, Plaintiff does not plausibly allege that she *personally* found her work environment to be hostile.  Plaintiff states that, as the WPO, she complained to her superior officers about numerous instances of sex-based discrimination on behalf of women in the department and "about problems she observed."  Dkt. 3 ¶¶ 19-24.  But Plaintiff fails to allege with specificity which of the listed instances were incidents that occurred to *her* or was disparate treatment that she *personally* experienced based on her sex.  *See id.* ¶ 24(a)-(q).  "Plaintiff cannot assert a hostile work environment claim on her own behalf based on observing unwelcome conduct directed at others."  *Robinson v. Prince William-Manassas Reg'l Adult Det. Ctr.*, No. 1:22-cv-00744, 2022 WL 17085916, at *3 (E.D. Va. Nov. 18, 2022).  While the incidents of discrimination that Plaintiff reported to her supervisors on behalf of other women (such as the lewd comment that she repeatedly refers to in her Opposition, *see* Dkt. 17 at 1, 2, 7) may assist in demonstrating that the work environment was objectively sexually hostile,[3] these incidents do not indicate that Plaintiff *personally* experienced similar harassment in her work environment.  *Carter v. Virginia Dep't of Game & Inland Fisheries*, No. 3:16-cv-661, 2017 WL 4413192, at *15 (E.D. Va. Sept. 29, 2017)

---

[3] *See Ziskie v. Mineta*, 547 F.3d 220, 225 (4th Cir. 2008) ("Hostile conduct directed toward a plaintiff that might of itself be interpreted as isolated or unrelated to gender might look different in light of evidence that a number of women experienced similar treatment.").

("Ms. Easter's contention that she observed others experiencing hostile acts does not, as alleged, plausibly assert a hostile work environment claim on her own behalf.").

Thus, Count 1 of the Amended Complaint will be dismissed without prejudice because Plaintiff has failed to allege with specificity that she was personally subjected to a hostile work environment based on her sex in violation of Title VII.

### 2.   Retaliation Claims (Counts 2 and 4)[4]

Count 2 alleges that Defendant Fairfax County retaliated against her in violation of Title VII "because of her opposition to sex discrimination."  Dkt. 3 ¶ 75.  Similarly, Count 4 asserts that Defendant denied Plaintiff a promotion to Fire Chief in retaliation for "her opposition to sex discrimination."  *Id.* ¶ 79.  Defendant Fairfax County seeks dismissal on the basis that Plaintiff has not demonstrated retaliation in response to protected activity because Defendant's alleged conduct "occurred *prior to* her participation in protected activity (*i.e.,* when she filed her EEOC Charge on May 22, 2018)."  Dkt. 14 at 7.  Further, Defendant asserts that Plaintiff has not alleged sufficient facts to demonstrate that her non-selection for Fire Chief was due to her protected activity.  *Id.* at 8.

To state a *prima facie* retaliation claim under Title VII, Plaintiff must sufficiently allege "(1) that [s]he engaged in protected activity, (2) that the employer took a materially adverse action against h[er] and (3) there is a causal connection between the protected activity and the adverse action."  *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019) (internal citations omitted).

Contrary to Defendant Fairfax County's assertion, filing a formal EEOC Charge is not the only way to engage in protected activity.  Opposing discriminatory conduct by complaining to one's employer about such conduct can also constitute protected activity.  *See Burgess v. Bowen*,

---

[4] It is unclear to the Court why Plaintiff has alleged her retaliation claim as two counts.

466 F. App'x 272, 282 (4th Cir. 2012) ("an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct."); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418-20 (4th Cir. 2015) (holding that employee assistance program consultant who helped an employee report a sexual harassment complaint engaged in protected activity); *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) (explaining that "if an employee—even one whose job responsibilities involve investigating complaints of discrimination—actively 'support[s]' other employees in asserting their Title VII rights or personally 'complain[s]' or is 'critical' about the 'discriminatory employment practices' of her employer, that employee has engaged in a protected activity" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Based on the Amended Complaint, Plaintiff engaged in protected conduct when she reported instances of sex-based discrimination to Senior Staff and Command Staff while serving as the WPO and in her resignation letter from the WPO position. *See* Dkt. 3 ¶¶ 20-25 (alleging that, from March 2016 to February 2018, Plaintiff raised numerous concerns about discriminatory issues that other women brought to her attention, as well as problems she observed, with Senior and Command Staff). Thus, Plaintiff has plausibly alleged that she engaged in multiple instances of protected activity.

The Court next considers whether Plaintiff has plausibly alleged that Defendant Fairfax County took materially adverse action against her. A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 63 (2006). The resulting "harm must be a '*significant detriment*'" to the plaintiff and "not 'relatively insubstantial or trivial.'" *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N.*, 548 U.S. at 68) (emphasis original). Typically, "[a]n adverse action is one that 'constitutes a significant change

in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc v. Ellerth*, 524 U.S. 742, 761 (1998).  But "misunderstandings, personality conflicts, job performance evaluations, and purely administrative matters" do not rise to the level of actionable retaliation. *Id.*

Defendant Fairfax County contends that Plaintiff's "allegations amount to no more than 'petty slights, minor annoyances, and simple lack of good manners'" which "do not qualify as materially adverse action as a matter of law." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Plaintiff counters that Defendant mischaracterizes the hostility she faced and overlooks the most "heinous" harassment alleged.  Dkt. 17 at 7.

The Amended Complaint lists several instances of alleged retaliation after Plaintiff reported sex-based discrimination to her superiors: (1) Fire Chief Bowers "expressed his hostility" and Plaintiff was "berated" during senior staff meetings for lodging complaints; (2) Plaintiff was made "the very last speaker" at an event where all other uniformed men spoke before civilian staff; and (3) Plaintiff was required to report her arrivals and departures every shift following an anonymous complaint that Plaintiff was guilty of time and attendance fraud, despite being on approved absence at the time.  Dkt. 3 ¶¶ 25-28.  Plaintiff further alleges that she suffered adverse action after resigning from the WPO position when: (4) Fire Chief Bowers barred Plaintiff from speaking with reporters about her resignation letter while on duty and in uniform; (5) Defendant's Director of HR encouraged Plaintiff to leave the FRD and gave her undesirable reassignment options that would result in her demotion; (6) Plaintiff's computer hard drive was replaced with a defective one, rendering her computer unusable; (7) Plaintiff's name was removed from the email

list of Battalion Chiefs to be notified of meetings or trainings; (8) Plaintiff was "excluded from meetings with senior VIP officers"; (9) the FRD failed to provide "financial, staffing, and other support" to Plaintiff in "her role as Host Agency liaison" for the iWomen conference; (10) AC Caussin denied Plaintiff's request to participate in the assessment of candidates for Fire Captain in Louisville, Kentucky; and (10) Plaintiff was denied a promotion to the position of Fire Chief despite allegedly having the requisite qualifications. *Id.* ¶¶ 32, 36-44, 45-49, 52-63, 67-69, 52-63.

Most of the retaliatory acts alleged, however, do not rise to the level of materially adverse actions. For instance, being berated, speaking last at an event, mandatory reporting of arrivals and departures, and being excluded from emails and meetings are generally considered "petty slights, minor annoyances, and simple lack of good manners." *Burlington*, 548 U.S. at 68; *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (finding that an employer's "yelling at [the plaintiff] during [a] meeting" did not rise to the level of an adverse employment action for Title VII purposes); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (being excluded from "certain meetings and emails" is not actionable adverse action), *abrogated on other grounds by Green v. Brennan*, 578 U.S. 547 (2016); *Scott v. Health Net Fed. Servs., LLC*, 807 F. Supp. 2d 527, 534 n.2 (E.D. Va. 2011) (being "taken aside, spoken to, and given a copy of the attendance policy when [plaintiff] was periodically tardy to work" is not ultimate employment action), *aff'd,* 463 F. App'x 206 (4th Cir. 2012). Similarly, the restriction on speaking to the media while on duty and in uniform, not being selected for an external opportunity or being denied "financial, staffing, and other support" for a conference do not "constitute[] significant change[s] in employment status" and do not qualify as materially adverse actions. *Hoyle*, 650 F.3d at 337 (internal quotations omitted); *Jackson v. Geren*, No. CIVA. 07-1063, 2008 WL 3910674, at *4 (E.D. Va. Aug. 19, 2008) ("the decision not to select Plaintiff to conduct Summer Safety Training

[] do[es] not constitute adverse employment actions."); *Surbey v. Stryker Sales Corp.,* No. CIV.A. 05-0228, 2005 WL 3274579, at *3 (E.D. Va. Nov. 28, 2005) ("Defendant's decision not to give Plaintiff an assistant is not an adverse employment action because it did not adversely affect the terms, conditions, or benefits of Plaintiff's employment."); *Barkhurst v. Johanns*, No. 07-CV-426-BR, 2008 WL 4826278, at *13 (D. Or. Nov. 3, 2008) (finding that "reallocation of certain funds from one project to other projects" was not materially adverse action).

As to the claim that Defendant ignored Plaintiff's requests for repair of her computer, Plaintiff fails to allege that having a non-functional computer negatively affected her performance and employment status to the degree that it constituted materially adverse action. Dkt. 3 ¶ 45(a). Some courts have suggested that the denial of a functional computer may constitute materially adverse action where the device is necessary to one's primary responsibilities and the delay in access is unreasonably long. *See, e.g.*, *Shivers v. Charter Commc'ns*, (6th Cir. May 4, 2023) (finding that "one-month delay in gaining access to computer systems" did "not rise to the level of an adverse employment action" where Plaintiff testified that, in the meantime, she could still carry out her primary responsibilities using other systems that she did have access to, that she could access the systems at issue by asking her coworkers, and that she was eventually given access to the systems at issue); *cf. E.E.O.C. v. Outsourcing Sols. Inc.*, No. 01 C 7037, 2002 WL 31409584, at *10 (N.D. Ill. Oct. 24, 2002) (finding that the inability "to perform certain functions on the computer" was not materially adverse action because there was no diminution of pay or benefits). Here, Plaintiff alleges that she "has been unable to use the computer, including merely to access the internet, since [her hard drive was replaced] (early February), despite almost daily requests for repair." Dkt. 3 ¶ 45(a). Plaintiff therefore may have plausibly alleged that the delay for repairs was unreasonably long, but she fails to allege whether the non-functional computer prevented her

from performing her primary job responsibilities so as to negatively affect her employment status to the degree of constituting materially adverse action.  As such, because Plaintiff has not alleged how, if at all, having a non-functional computer impacted the performance of her primary job responsibilities, Plaintiff has not plausibly alleged that she faced materially adverse action.

Likewise, Plaintiff's claim that she was given three reassignment options that would have resulted in her demotion also fails to establish materially adverse action, although it comes close to what might typically be considered such action.  *See Suarez Corp. Indus. V. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (explaining that sufficiently severe retaliatory acts include decisions regarding "promotion, transfer, recall, and hiring").  A reassignment to a less appealing job is an adverse action if it has a "significant detrimental effect," such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion." *Boone v. Golden*, 178 F.3d 253, 256 (4th Cir. 1999); *Booz-Allen & Hamilton, Inc.*, 368 F.3d at 375 (explaining that the "mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action").  Here, Plaintiff alleges that the Director of HR presented her with a choice to either (1) accept one of two "exceptionally low status" positions that would result in Plaintiff being "relieved of her rank, office, and car" and having "no regular contact with the FRD" or (2) be "demot[ed] from BC of Special Projects" and "instead . . . assist assorted FRD personnel with ad hoc projects." Dkt. 3 ¶¶ 40-43.  However, Plaintiff alleges that she declined these options and, because she does not allege otherwise, the Court assumes that she continued in her position. *Id.* ¶ 44 (alleging that Plaintiff's attorneys sent a letter "declining the three 'options' provided").  Additionally, Plaintiff was later "offered a position as Battalion Chief of Special Projects at the fire academy." *Id.* ¶ 66. Plaintiff accepted the position and did not allege any reduction in rank or salary. *Id.*  Plaintiff therefore has not demonstrated that the options initially presented to her resulted in any materially

adverse change to her employment status.  The mere proposal of reassignment or demotion without any actual implementation or resulting "decrease in compensation, job title, level of responsibility, or opportunity for promotion" does not meet the threshold of materially adverse action under Title VII.  *Boone*, 178 F.3d at 256.

In Count 4, Plaintiff alleges that Defendant Fairfax County failed to promote her to the Fire Chief position in retaliation for the filing of her EEOC Charge on May 22, 2018, as well as her other alleged protected activities.  Dkt. 3 ¶¶ 3, 55, 79; *Jones v. HCA*, 16 F. Supp. 3d 622, 634 (E.D. Va. 2014) (holding that "filing an EEOC charge is protected activity").  In this regard, Plaintiff fares better than her prior allegations.  The failure to promote Plaintiff to Fire Chief is unquestionably a material adverse action.  *McGraw*, 202 F.3d at 686 (explaining that sufficiently severe retaliatory acts include decisions regarding promotions).  Moreover, Plaintiff has alleged facts that demonstrate both a temporal connection based on the time between her EEOC Charge and the decision not to promote her[5] and based on the totality of the retaliatory animus alleged to have been directed at her by Defendant Fairfax County following the publicization of Plaintiff's January 2018 WPO Resignation Letter.  *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (finding that Plaintiff could allege causation based on intervening events that demonstrated animus).  In particular, Plaintiff's allegations that she was told to "finish [her] career outside of the fire department," that she was presented with options for demotion, that she was made to use a non-functional computer, that she was removed from important email notifications and excluded from meetings, and that her communications regarding a possible fire academy assignment were

---

[5] Plaintiff alleges that she filed her EEOC Complaint on May 22, 2018, and initially interviewed for the Fire Chief position just one month later on June 21, 2018.  Dkt. 3 ¶¶ 3, 55. Defendant Fairfax County announced that the position was filled on July 11, 2018, after declining to extend a final interview to Plaintiff (who was referred for one), despite extending a final interview to every other candidate who was referred.  *Id.* ¶¶ 57-58, 62.

disregarded until her lawyers intervened become more significant here.  Dkt. 3 ¶¶ 36-44, 45, 64-69.  Although these actions may not presently be alleged in sufficient detail to independently qualify as materially adverse actions, they are regularly occurring intervening events that are sufficient to show a causal link between Plaintiff's January 2018 WPO Resignation Letter and her non-selection for Fire Chief.  *See Lettieri*, 478 F.3d at 651 ("These intervening events – which occurred regularly . . . and can reasonably be viewed as exhibiting retaliatory animus on the part of Taylor and Parkinson – are sufficient to show a causal link between Lettieri's complaint and her termination.").  Accordingly, the motion to dismiss Count 4 will be denied.

In sum, while Plaintiff alleges that she experienced various retaliatory acts, as currently pleaded only the failure to promote rises to the level of materially adversity necessary to state a retaliation claim under Title VII.  Accordingly, the Court will therefore dismiss Count 2 without prejudice, but will deny the motion with respect to Count 4.

### 3.  Denial of Promotion – Sex Discrimination (Count 3)

Count 3 alleges that Defendant Fairfax County denied Plaintiff "a promotion to the position of Fire Chief because of her sex."  Dkt. 3 ¶ 77.  Defendant Fairfax County contends that Plaintiff fails to allege sufficient facts demonstrating that her non-selection was due to her sex.  Dkt. 14 at 8.

To state a failure-to-promote claim under Title VII, Plaintiff must demonstrate that "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination."  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citations omitted).

Plaintiff has alleged that she is a woman, that she applied for the vacant position of Fire

Chief, and that she had the requisite qualifications listed in the job announcement.  Dkt. 3 ¶¶ 53-54.  She also claims that she was as qualified as, or possibly more qualified than, those selected for a final interview and the man who received the position.  *Id.* ¶ 59-63.  Despite her "superior" qualifications, Plaintiff did not receive a final interview or the position.  *Id.* ¶ 56-58. As the Supreme Court has recognized, a plaintiff need not explicitly allege the elements of a *prima facie* discrimination case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), so long as the plaintiff alleges sufficient facts to plausibly allege discrimination, *Twombly*, 550 U.S. at 570.  Here, although it is a close question, Plaintiff has satisfied her pleading burden.  Plaintiff has alleged an environment where women were routinely subject to sexist conduct, denied overtime shifts, denied promotions, and denied access to specialized training and where Defendant Fairfax County was hostile to requests to investigate alleged incidents of sex discrimination. Dkt. 3 ¶¶ 24-25.  This is sufficient to plausibly allege a failure-to-promote claim based on sex discrimination and survive a motion to dismiss.  *See Fentress-Bussy v. Austin*, 2024 WL 3823784, at *5-*6 (E.D. Va. Aug. 14, 2024) (Alston, J.) (holding that a plaintiff plausibly stated a claim of race discrimination based on a failure-to-promote where plaintiff alleged that a supervisor had a history of placing African-American employees on details and failing to promote them beyond a certain level); *see also Roughgarden v. YottaMark, Inc.*, 2011 WL 856279, at *2 (N.D. Cal. Mar. 9, 2011) (holding that allegations that company had a history of terminating older workers combined with allegations of a youth-oriented policy were sufficient to survive a motion to dismiss).

Thus, at the motion to dismiss stage, Plaintiff has alleged sufficient facts to nudge her claim of sex discrimination with respect to her non-selection for Fire Chief across the line from possible to plausible.  Whether Plaintiff can ultimately prove her claims after discovery remains to be seen, but Plaintiff's allegations survive to reach that next stage.

B.  Defendant IAFF's Motion to Dismiss

Defendant IAFF moves this Court to dismiss it from the suit because Plaintiff failed to "fil[e] a charge of discrimination against the IAFF with the EEOC," and therefore has not properly exhausted any claims against the IAFF.  Dkt. 25 at 8.  Additionally, Defendant contends that, the exhaustion defect aside, dismissal is still appropriate because Plaintiff "failed to allege a single fact indicating any action or omission of the IAFF in her Amended Complaint that would allow the Court to rule that the IAFF is liable for any of the alleged discriminatory or retaliatory conduct." *Id.* at 12.  The Court will first address Defendant's exhaustion argument.

Before filing a Title VII suit in federal court, a plaintiff must first exhaust her administrative remedies with the EEOC.  *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the [EEOC].").  "To exhaust administrative remedies as to a particular defendant, a plaintiff must name that defendant in his or her EEOC charge." *Carter v. Arlington Pub. Sch. Sys.*, 82 F. Supp. 2d 561, 567 (E.D. Va. 2000).  Failure to name a party in the initial EEOC charge will typically result in dismissal of the Title VII claims against that party.  *See Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) ("Under Title VII . . . a civil action may be brought only 'against the respondent named in the charge.'" (quoting 42 U.S.C. § 2000e–5(f)(1) (1994))); *see also Wailes v. DeJoy,* No. 7:22-cv-12, 2023 WL 2695151, at *6 n.4 (W.D. Va. Mar. 29, 2023) (noting that "a plaintiff must plausibly allege that she exhausted administrative remedies to withstand a motion to dismiss").  This naming requirement serves the dual purpose of (1) notifying a charged party of the alleged violations against them and (2) allowing the parties to resolve the dispute through voluntary conciliation.  *Kouri v. Todd,* 743 F.Supp. 448, 450 (E.D. Va. 1990).  Where the "procedural error" of failing to name a defendant "ha[s] no effect on the underlying purposes of

the requirement," "there [is] no reason to dismiss the Title VII claims against" that defendant. *Clay v. Consol Pennsylvania Coal Co., LLC*, 955 F.Supp.2d 588, 601.

Defendant IAFF asserts that it must be dismissed from the Amended Complaint because the organization was not named in Plaintiff's underlying EEOC Charge and, as such, Plaintiff failed to exhaust her administrative remedies against the IAFF. Dkt. 25 at 8-11. Upon review of the record, the Court agrees.

In her EEOC Charge, Plaintiff named "Local 2068, International Association of Firefighters" as the sole respondent. Dkt. 28-1, Ex. A at 6. As the Fourth Circuit has recognized, "local union chapters are separate and distinct entities from their international parents." *United Elec. Workers v. N.L.R.B.*, 986 F.2d 70, 75 (4th Cir. 1993); *see also Nat'l Labor Relations Bd. V. Media General Operations, Inc.*, 360 F.3d 434, 446 (4th Cir. 2004) ("a local union affiliate . . . is an entity separate and distinct from its international parent."). Therefore, as Plaintiff herself concedes, she failed to name the international organization—Defendant IAFF—as a separate and distinct respondent in the underlying EEOC complaint. *See* Dkt. 18 at 7 (recognizing that "only the local union was named in the EEOC [c]harge"). Moreover, Plaintiff does not allege that the IAFF somehow "receive[d] notice of the Title VII claims," "participate[d] in the EEOC conciliation process," or otherwise "ha[d] an opportunity to present its position" to the EEOC. *Fontell v. MCGEO UFCW Loc. 1994*, No. CIV.A AW-09-2526, 2010 WL 3086498, at *7 (D. Md. Aug. 6, 2010) (dismissing Title VII claims against local union defendant that was not named in underlying EEOC charge even though international affiliate was named), *aff'd*, 410 F. App'x 645 (4th Cir. 2011). Allowing the instant action to proceed against Defendant IAFF would defeat the purpose of the Title VII naming requirement, as the IAFF had no notice of the alleged violations nor any opportunity to voluntarily participate in conciliation.

In opposition to Defendant IAFF's motion to dismiss, Plaintiff asserts that "[m]embers of the local union working in Fairfax County are also members of the IAFF," and that "an international union" can be held liable "for the discriminary acts of its local members."  Dkt. 27 at 8.  For support, Plaintiff cites *Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 270 (4th Cir. 1976), in which the Fourth Circuit found that an international union could be held liable alongside a local chapter where "a vice president of the International acted as an 'advisor' to the local, playing an active role" in negotiations that led to the alleged discriminatory conduct.  But nowhere in the Amended Complaint does Plaintiff allege that an agent of the international IAFF played an active role in the discrimination against her, or that members of the local chapter also worked as agents of the international organization.  Rather, she asserts that "at this stage, it is sufficient that the Amended Complaint alleges involvement by the IAFF; discovery is necessary to develop evidence of the IAFF's involvement in the discrimination against Stanley."  *Id.*  Plaintiff is incorrect.  All of Plaintiff's allegations concerning the union's alleged discriminatory and retaliatory acts revolve around Local 2068's Facebook page and leadership, with no mention of the international organization at all.  *See generally* Dkt. 3.  Furthermore, this court cannot "allow a complaint to 'survive a motion to dismiss [simply because] the pleadings [leave] open the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery."  *McCleary-Evans*, 780 F.3d at 587; *see also Smith v. Cir. City Stores, Inc.*, 286 F. Supp. 2d 707, 717 (E.D. Va. 2003) ("It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate their claim."); *Lescs v. City of Winchester*, No. 5:19-cv-00061, 2021 WL 966883, at *1 (W.D. Va. Mar. 15, 2021) (explaining that a plaintiff "is not entitled to discovery so that she can defeat or overcome a motion to dismiss. The premise of a Rule 12(b)(6) motion to dismiss for failure to state a claim is that the plaintiff is

not entitled to discovery in the first instance").  It is therefore insufficient for Plaintiff to merely name the international organization as a Defendant without more, in hopes that discovery will reveal additional facts to validate her claims.

In sum, where, as here, a Title VII administrative charge names a local chapter of an international organization, and the international organization does not receive notice nor participate in the administrative proceedings, the failure to name the international organization bars subsequent civil action against that party.

Accordingly, Defendant IAFF's Motion to Dismiss will be granted.[6]

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant Fairfax County's Motion to Dismiss (Dkt. 13) is GRANTED-IN-PART and DENIED-IN-PART and that Defendant IAFF's Motion to Dismiss (Dkt. 24) is GRANTED; and it is

FURTHER ORDERED that Counts 1, 2, 5, and 6 of the Amended Complaint are DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Defendant IAFF is hereby DISMISSED from the case WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file any amended complaint on or before October 4, 2024, or to notify the Court that she intends to proceed solely on Counts 3 and 4 by that date.

---

[6] Although the Court need not address every argument that Defendant IAFF raises with respect to its alternative basis for dismissal, the Court notes that Plaintiff's allegations are wholly conclusory with respect to how Defendant IAFF subjected Plaintiff to a hostile work environment or retaliated against Plaintiff, and how Defendant caused Plaintiff to suffer loss of pay, etc.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties of record.

It is SO ORDERED.

Alexandria, Virginia
September 4, 2024

/s/

Rossie D. Alston, Jr.
United States District Judge